KAREN P. HEWITT
United States Attorney
CHRISTOPHER P. TENORIO
Assistant U.S. Attorney
California State Bar No. 166022
880 Front Street
San Diego, California 92101-8893
Telephone: (619) 557-7843
Christopher.Tenorio@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 07CR3236-JLS |
| Plaintiff, | DATE: February 15, 2008<br>TIME: 1:30 p.m. |
| v. | |
| TRAVIS PAUL CROSBY, | GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO: |
| Defendant. | 1) REVEAL CONFIDENTIAL INFORMANT;<br>2) COMPEL DISCOVERY/PRESERVE EVIDENCE;<br>3) DISMISS INDICTMENT DUE TO MISINSTRUCTION TO THE GRAND JURY; AND,<br>4) GRANT LEAVE TO FILE FURTHER MOTIONS |
| | TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Christopher P. Tenorio, Assistant United States Attorney, and hereby files its response and opposition to Defendant's above-referenced motions. Said response is based upon the files and records of the case, together with the attached Statement of Facts and Memorandum of Points and Authorities.

# I.

## STATEMENT OF FACTS

On July 18, 2007, Defendant Travis Paul Crosby entered the Union Bank of California, located at 8630 Lake Murray Boulevard, in San Diego. The bank is insured by the Federal Deposit Insurance Corporation. Defendant provided a demand note to a teller and received $2,069. The teller, Rachael Crampton described the robber as a white male in his early to mid-30's, approximately 6'2" tall, and approximately 245 pounds. Defendant is a white male, 6'2" and 240 pounds. Ms. Crampton subsequently identified Defendant from a photographic lineup.

On October 1, 2007, Lorena Gonzales, Defendant's former probation officer, positively identified Defendant as the individual shown in surveillance photographs of the robbery. Defendant was also identified in the photographs by his father, Neal Crosby, and his sister, Kelly Crosby.

Defendant had previously robbed the same bank on September 25, 2001 during a spree of four robberies between September and December, 2001. (He pleaded guilty to robbing one of the banks and served 41 months in custody.) The note Defendant handed to Ms. Crampton in the latest robbery provided, in part:

> This is a robbery. Keep your hand where I can see them. If you move or tell anyone else, I'll shoot/kill them. There is another guy waiting for me.

At the first robbery of the Union Bank on September 25, 2001, Defendant provided a note to a teller that read, in part:

> If you move or tell anyone else, I'll shoot/kill them. There is another guy waiting for me.

Additionally, in the remaining three robberies Defendant committed in

2001, he spoke to each of the victim-tellers and provided each with a note referencing a partner outside of the bank with a weapon.

Defendant was arrested on November 11, 2007. He was provided his Miranda rights and invoked his right to remain silent.

## II.

## POINTS AND AUTHORITIES

### A. THE GOVERNMENT SHOULD NOT BE ORDERED TO PRODUCE THE IDENTITY OF THE CONFIDENTIAL INFORMANTS REFERRED TO IN THE SEARCH WARRANT AFFIDAVIT

Defendant moves for the production of the identity of any confidential informant. The Government, however, argues that the identity of such informant need not be revealed at this date.

#### 1. The Continued Concealment of the Informant's Identity is Justified Where the Threat of Harm is Present

The Supreme Court has recognized that the government may withhold the identity of persons who furnish confidential information to law enforcement officers. Roviaro v. United States, 353 U.S. 53, 59 (1957). The concealment of an informant's identity is justified to permit the continuation of a secret investigation, or to protect the parties and their families from retaliation or harm. Whitaker v. Garcetti, 291 F.Supp.2d 1132, 1146 n.31 (C.D. Cal. 2003).

In the present case, the San Diego Police Department received information from a confidential informant who is continuing to cooperate on unrelated matters. The revelation of his identity, therefore, will jeopardize his safety. Because the revelation of his identity is premature, the burden must turn to the defendant to justify the immediate disclosure.

//

//

**2. The Defendant Must Identify a Basis to Override the Concern For the Informant's Safety**

In ruling on disclosure requests, a trial court must balance the extent to which disclosure would be relevant and helpful to the defendant's case and the government's interest in protecting the identity of a particular informant. In doing so, the court must consider, "the public interest in protecting the flow of information against the individual's right to prepare his defense." United States v. Spires, 3 F.3d 1234, 1238 (9th Cir. 1993), quoting Roviaro, 353 U.S. at 69. A defendant, however, has the burden to make "a 'minimal threshold showing' that disclosure would be relevant to at least one defense." United States v. Spires, 3 F.3d 1234, 1238 (9th Cir. 1993); United States v. Sai Keung Wong, 886 F.2d 252, 256 (9th Cir. 1989); see also, United States v. Ordonez, 722 F.2d 530, 539 (9th Cir. 1983)(holding hearing justified where defendant alleged mistaken identity).

Here, a confidential informant provided information that the defendant bragged about committing two bank robberies. The informant was not a percipient witness to the alleged robbery. As such, there is no reason to reveal the informant's identity at this time unless the defendant can provide further justification. Until that time, however, the defendant must first meet his burden of making a minimal threshold showing of relevance. See Spires, 3 F.3d at 1238.

**3. The Government Can Facilitate a Meeting with the Informant**

Defendant also requests that the Government assistant in facilitating a meeting between the defense and the informant. The Government has no objection to this request and can make reasonable

arrangements, agreeable to both parties, for the defense to meet with the informant reasonably in advance of trial.

**4. Informant Discovery**

Defendant further requests discovery relating to the informant. The Government will address the request in conjunction to its response to Defendant's further requests for discovery below.

**B. THE GOVERNMENT WILL COMPLY WITH DISCOVERY OBLIGATIONS**

Defendant moves to compel discovery. Except as described below, the Court should deny Defendant's discovery requests.

**1. Rule 16(a)(1)(A): Defendant's Statements**

The Government has already disclosed all known written and statements of Defendant and the substance of oral statements made by Defendant in response to questions by government agents in this case. The Government will also provide a recorded videotaped statement of Defendant.

**2. Arrest Reports, Notes and Dispatch Tapes**

The Government at this time objects to the full production of the officers' handwritten or rough notes of interviews with prospective witnesses, or the production of any dispatch tapes or notes taken while listening to any dispatch tapes.

The discovery of rough notes of an interviewing agent are only potentially discoverable under the Jencks Act or Rule 16, and may be preserved to permit the district court to potentially decide whether they become discoverable. United States v. Harris, 543 F.2d 1247, 1252-53 (9th Cir. 1976); but see United States v. Griffin, 659 F.2d 932, 940 (9th Cir. 1982) (holding that the Harris court "actually failed to reach the issue of whether Rule 16 requires the preservation and subsequent production of an agent's rough notes of an interview

with [a] defendant.”). Whether notes must be produced must be decided on a case-by-case basis after an examination of the relevant facts, but not where the substance of the notes have been preserved in a formal memorandum. United States v. Pisello, 877 F.2d 762, 768 (9th Cir. 1976), cited in United States v. Williams, 291 F.3d 1180, 1191 (9th Cir. 2002).

Pre-trial production of rough notes of interviews with prospective witnesses is generally not required. See 8 U.S.C. § 3500. If rough notes do exist, they may become discoverable if they constitute “statements” within the meaning of the Jencks Act. Notes of investigators are “statements,” only if they are (1) writings made by the witness are “signed or otherwise approved or adopted” by him, or (2) accounts which are “a substantially verbatim recital” of the witness’s oral statements “recorded contemporaneously with the making of such oral statement.” 18 U.S.C. § 3500(e); Griffin, 659 F.2d at 936.

If such notes constitute “statements,” then they are discoverable after the testimony of the person from whom the statement was obtained, where that person “signed or otherwise approved” the statement (18 U.S.C. § 3500(e)(1)), or they are verbatim recitals of the interviewee’s oral statements to the interviewing agent (18 U.S.C. § 3500(e)(2)). Id. at 937. The notes would not become discoverable after the testimony of the interviewing agent because the “statement” does not represent the agent’s own words. Id. at 938. Notes of observations taken while on surveillance are also generally incomplete and not discoverable because they do not comprise a substantially verbatim narrative of the officer’s assertions. United States v. Bobadilla-Lopez, 954 F.2d 519, 521-522 (9th Cir. 1992); United States

v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).

If such rough notes exist in this case of interviews with potential witnesses, they would also remain undiscoverable under Rule 16 unless they have been adopted verbatim by the interviewed witness or are otherwise discoverable pursuant to Brady. See e.g., United States v. Friedman, 593 F.2d 109, 119 (9th Cir. 1979). A statement of a government witness is discoverable pursuant to Rule 16 only to the extent that its production is compelled by the Jencks Act. Id. at 120; United States v. Walk, 533 F.2d 417, 419 (9th Cir. 1975).

Further, although Rule 16(a)(1) allows for the discovery of a written or recorded statement made by the defendant, notes of an investigator which incorporate the statements of a witness, which in turn contain oral "statements" allegedly attributable to the defendant, are not discoverable except as permitted by the Jencks Act. Walk, 533 F.2d at 418. Further, Rule 16(a)(1)(A) does not require the discovery of a defendant's oral statements unless they are made in response to interrogation by a person the defendant knows to be a federal agent. United States v. Hoffman, 794 F.2d 1429, 1432 (9th Cir. 1986). Notes of voluntary oral statements by the defendant, therefore, are not discoverable. Id.

### 3. Rule 16, and Brady: For All Purposes, Including Sentencing

The Government is well aware of, and will fully perform, its duty under, Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976). Accordingly, the Government will disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant is not entitled to all evidence known or believed to exist which is, or may be, favorable to

the accused, or which pertains to the credibility of the Government's case. As the Ninth Circuit Court of Appeals stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980):

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.

Id. at 774-75 (citations omitted). See also United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980) (the Government is not required to create non-existent exculpatory material); United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any pretrial discovery privileges not contained in the Federal Rules of Criminal Procedure).

The Government is unaware of any Brady material beyond that discussed above, and will produce such material if it becomes available. The Government is presently unaware of any criminal involvement by any prospective government witness, or that any prospective government witness is under investigation.

**4. Rule 16(a)(1)(A), (B) and (C) and Fed. R. Evid. 404(b): Prior Arrests, Convictions Or Bad Acts**

The Government has already provided the Defendant with arrest reports, judgment and conviction documents for prior offenses, and other evidence of prior bad acts pursuant to Rules 16(a)(1)(A), (B) and (C). The Government reserves the right to introduce such prior bad acts, and will address such evidence and its intentions in motions in limine to be filed separately according to the Court's scheduling orders.

//

//

**5. Rule 16(a)(1)(C): Documents and Tangible Evidence and Evidence Seized**

In accordance with obligations under Rule 16(a)(1)(C) and 16(c), the Government will permit the Defendant to inspect and copy or photograph all books, papers, documents, photographs, tangible objects, buildings, or places, or portions thereof, which are within or may come within the possession, custody, or control of the Government, and which are material to the preparation of the Defendant's defense or are intended for use by the Government as evidence-in-chief at trial or were obtained from or belong to the Defendant.

**6. Expert Witness Notice Will Be Provided**

The Government will meet obligations pursuant to Fed. R. Crim. P. 16(a)(1)(E) to disclose information regarding expert witnesses. The Government will produce details regarding the nature of the expert's testimony, and the qualifications of the expert when a trial date is scheduled and any expert is obtained.

**7. Evidence of Bias, Motive to Lie, Impeachment or Criminal Investigations Regarding Government Witnesses.**

The Government is unaware of any evidence indicating that a prospective government witness is biased or prejudiced against Defendant. The Government is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony. The Government is aware of, and will comply with, its obligations regarding impeachment evidence pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976).

**8. The Defendant Is Not Entitled to Witness Addresses**

The Government objects to Defendant's request for witness

addresses. Defendant may obtain access to witnesses through the Government if the witnesses are not represented by counsel.

### 9. <u>**The Government Is Unaware of Favorable Defense Witnesses**</u>

The Government is unaware of any witness who made a favorable statement concerning the Defendant, or of any statement that may be favorable to Defendant's defense, which have not already been provided in discovery.

### 10. <u>**The Government Will Comply With *Giglio***</u>

The Government has not made any promises, express or implied, to any government witnesses in exchange for their testimony in this case. Therefore, the Government is currently unaware of any discoverable impeachment information pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

### 11. <u>**Jencks Act**</u>

Consistent with the Jencks Act, 18 U.S.C. § 3500, the Defendant is not entitled to disclosure of witness statements prior to the witness testifying on direct examination at trial. The Government must produce these statements only after the witness testifies on direct examination. <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 (9th Cir. 1986); <u>United States v. Mills</u>, 641 F.2d 785, 790 (9th Cir.). Indeed, even material believed to be exculpatory and, therefore, subject to disclosure under the <u>Brady</u> doctrine, if contained in a witness statement subject to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under the Act. <u>See</u> <u>United States v. Bernard</u>, 623 F.2d 551, 556 (9th Cir. 1979).

The Government reserves the right to withhold the statements of any particular witnesses until after they testify. However,

notwithstanding any statements the Government deems necessary to withhold, the Government will disclose witness statements prior to trial in as timely a manner as practicable, provided defense counsel has complied with his obligations under Rules 12.1, 12.2, 16 and 26.2 of the Federal Rules of Criminal Procedure, and provided that defense counsel submitted all reciprocal discovery and "reverse Jencks" statements.

The Government will comply with its Rule 26.2 obligation to produce for the Defendant's examination statements of witnesses in the Government's possession after, or shortly before, such witnesses testify on direct examination. The Government objects to the Defendant's request that such statements be produced at this time. Similarly, if Rule 12(i) becomes relevant pursuant to suppression proceedings, the Government will comply with obligations to produce statements in accordance with Rule 26.1.

The Government objects to Defendant's request for handwritten I-213 forms to the extent, if any exist, the identical information has been provided in the typewritten versions provided.

**12. Residual Request**

The Government objects to Defendant's broad, unarticulated "residual" discovery request. The Government will otherwise comply with its continuing discovery obligations.

**13. Preserve Evidence**

The Government does not object to Defendant's motion to preserve evidence to the extent it covers evidence within the Government's possession and discoverable pursuant to Federal Rule of Criminal Procedure 16. The Government objects, however, to Defendant's blanket request to preserve unspecified evidence.

### C. THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED

#### 1. Introduction

The present response is the standard response provided by the U.S. Attorney's Office to the standard motion filed by Federal Defenders of San Diego, Inc. regarding the above-captioned issue. It was the understanding of Government Counsel that an agreement had been entered by the two offices such that the issue would be pursued on appeal in only one case. Because Defendant filed a similar motion, however, the Government will file its standard response in an abundance of caution.

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 11, 2007.[1/] Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the indictment should be dismissed.

In making his arguments concerning the two separate instructions Defendant urges this Court to dismiss the indictment on two separate

---

[1/] Defendant supplies a "Partial Transcript" of the grand jury proceedings which records the instructions to the impaneled grand jurors after the voir dire had been conducted. [Appendix 1.] To amplify the record herein, we are supplying a redacted "Supplemental Transcript" which records relevant portions of the voir dire proceedings. [Appendix 2.]

basis relating to grand jury procedures both of which were discussed in United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992). Concerning the first attacked instruction, Defendant urges this Court to dismiss the indictment by exercise its supervising powers over grand jury procedures. This is a practice the Supreme Court discourages as Defendant acknowledges, citing United States v. Williams, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure."). Isgro reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment. The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct. Absent such prejudice-that is, absent " 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"-a dismissal is not warranted.

974 F.2d at 1094 (citation omitted, emphasis added). Concerning the second attacked instruction, in an attempt to dodge the holding in Williams, Defendant appears to base his contentions on the Constitution as a reason to dismiss the indictment. [Defendant's Memorandum ("A grand jury so badly misguided is no grand jury at all under the Fifth Amendment").] Concerning that kind of a contention Isgro stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial

> misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

974 F.2d at 1094 (citation omitted)[2]

The portions of the two relevant instructions approved in Navarro-Vargas were:

> You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

> The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems. It is entirely proper that you should receive this assistance. If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form

---

[2] In Isgro the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries. They did not prevail. 974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment." (relying on Williams)).

of 'jury nullification.'"[3/] 408 F.3d at 1203 (footnote omitted). "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law; it receives no briefs or arguments from the parties. The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'" Id.

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction the court stated:

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution. The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . . . The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other." Id.

**2. The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper**

Concerning whether the new grand jurors should concern themselves

---

[3/] The Court acknowledged that as a matter of fact jury nullification does take place, and there is no way to control it. "We recognize and do not discount that some grand jurors might in fact vote to return a no bill because they regard the law as unwise at best or even unconstitutional. For all the reasons we have discussed, there is no post hoc remedy for that; the grand jury's motives are not open to examination." 408 F.3d at 1204 (emphasis in original.)

with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.
>
> But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you. That's a judgment that congress makes.
>
> And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient." Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

Partial Transcript pp. 8-9.[4/]

Defendant acknowledges that, in line with Navarro-Vargas, "Judge Bums instructed the grand jurors that they were forbidden 'from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity [as] criminal is not up to

---

[4/] The Supplemental Transcript supplied herewith (Appendix 2) recounts the excusing of the three individuals. This transcript involves the voir dire portion of the grand jury selection process, and has been redacted, to include redaction of the individual names, to provide only the relevant three incidents wherein prospective grand jurors were excused. Specifically, the pages of the Supplemental Transcript supplied are: page 15, line 10 - page 17, line 18; page 24, line 14 - page 28, line 2; page 38, line 9 - page 44, line 17.

you.'" Defendant notes, however, that "[t]he instructions go beyond that, however, and tell the grand jurors that, should 'you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient' or 'I'm going to vote in favor of even though the evidence maybe insufficient.'" Defendant contends that this addition to the approved instruction, "flatly bars the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution." Defendant further contends that the flat prohibition was preemptively reinforced by Judge Burns when he "referred to an instance in the grand juror selection process in which he excused three potential jurors," which resulted in his "not only instruct[ing] the grand jurors on his view of their discretion; [but his] enforc[ing] that view on pain of being excused from service as a grand juror."[5]

In concocting his theory of why Judge Burns erred, Defendant posits that the expanded instruction renders irrelevant the debate about what the word "should" means. Defendant contends, "the instruction flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution." This argument mixes-up two of the holdings in Navarro-Vargas in the hope they will blend into one. They do not.

Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom of the criminal laws. The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at

---

[5] See Appendix 2.

1187, 1202, is not an expression of discretion. Jury nullification is forbidden although acknowledge as a sub rosa fact in grand jury proceedings. Id. at 1204. In this respect Judge Burns was absolutely within his rights, and within the law, when he excused the three prospective grand jurors because of their expressed inability to apply the laws passed by Congress. Similarly, it was proper for him to remind the impaneled grand jurors that they could not question the wisdom of the laws. As we will establish this reminder did not pressure the grand jurors to give up their discretion not to return an indictment. Judge Burns' words cannot be parsed to say that they flatly bars the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution because they do not say that. That aspect of a grand jury's discretionary power (i.e. disagreement with the prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction wherein the term "should" was germane.[6] 408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is Found"). This other instruction bestows discretion on the grand jury not to indict.[7] In finding this instruction constitutional, the

---

[6] That instruction is not at issue here. It read as follows:

> [Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged. To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[7] The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence. The language of the model charge does not state that the jury "must" or "shall" indict, but merely

court stated in words that ring true here, "It is the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer." 408 F.3d at 1206. The other instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause. That's the simple formulation that I mentioned to a number of you during the jury selection process. Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that an whether a certain person is associated with the commission of that crime, committed it or helped commit it.
>
> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward. If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Partial Transcript pp. 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime. Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.
>
> To put it another way, you should vote to indict when

---

> that it "should" indict if it finds probable cause. As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir.2002) (per curiam)). In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment. 408 F.3d at 1206.

> the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Partial Transcript p. 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the discretion not to return an indictment per Navarro-Vargas. Further, if a potential grand juror could not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential jury nullification advocate. See Merced v. McGrath, 426 F.3d 1076, 1079-80 (9th Cir. 2005). Thus, there was no error requiring dismissal of this indictment or any other indictment by this Court exercising its supervisory powers.

Further, a reading of the dialogues between Judge Burns and the three excused jurors found in the Supplemental Transcript excerpts (Appendix 2) reflects a measured, thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury because of their views. Judge Burns' reference back to those three colloquies cannot be construed as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

Finally, even if there was an error, Defendant has not demonstrated he was actually prejudiced thereby, a burden he has to bear. "Absent such prejudice-that is, 'absent 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]' - a dismissal is not warranted." Isgro, 974 F.2d at 1094.

//

**3. The Addition to the "United States Attorney and his Assistant United States Attorneys" Instruction Did Not Violate the Constitution**

Concerning the new grand jurors' relationship to the United States Attorney and the Assistant U.S. Attorneys, Judge Burns variously stated:

> [T]here's a close association between the grand jury and the U.S. Attorney's Office.
> . . .
> You'll work closely with the U.S. Attorney's Office in your investigation of cases.

Partial Transcript p. 11

> [I]n my experience here in the over 20 years in this court, that kind of tension does not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries. They generally work together.

Partial Transcript p. 12.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

Partial Transcript p. 20.[8/]

> As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex

---

[8/] Just prior to this instruction, Judge Burns had informed the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily . . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

> legal matters. It's entirely proper that you should receive the assistance from the government lawyers.
>
> But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Partial Transcript pp. 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that by making that statement, "Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause." Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'" [Id.] Thereafter, Defendant contends:

> These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:
>
> (1) I have to consider evidence that undercuts probable cause.
>
> (2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.
>
> (3) Because no such evidence was presented to me, I may conclude that there is none.
>
> Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

> The instructions therefore discourage investigation -- if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be week [sic], but I know that there is nothing on the other side of the equation because it was not presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

[Defendant's Memorandum.] (emphasis added.)[9/]

Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," however, is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it.") (emphasis added);[10/]

---

[9/] The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)). See also United States v. Warren, 25 F.3d 890, 897 (9th Cir.1994).

[10/] Note that in Williams the Court established:

> Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury. Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

see also, United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury.") (citing Williams) (emphasis added).

However, the analysis does not stop there. Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand jury.[11] As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM"),[12] which provides as follows:

> In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor

---

504 U.S. at 45 (citation omitted). The Court concluded, "courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings." 504 U.S. at 55; see also, United States v. Haynes, 216 F.3d 789, 797-98 (9th Cir. 2000). However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms. 974 F.2d at 1096.

[11] He recalled those days when instructing the new grand jurors. [Partial Transcript pp. 12, 14-16, 17-18.]

[12] The USAM is available on-line at: www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html

> must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

USAM Section 9-11.233 (emphasis added.)[13/] This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233." (Emphasis added.)[14/]

---

[13/] See: www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/11mcrm.html

Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[14/] See: www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm

Similarly, this new section does not bestow any procedural or substantive rights on defendants.

> Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E."

The fact that Judge Burns' statement contradicts Williams, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant. No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors. Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[15/] If it does exist, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation. Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate. In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[16/] There is nothing

---

[15/] Recall Judge Burns also told the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

[16/] Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going

wrong in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution. In Isgro, the Ninth Circuit, while reviewing Williams, established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment. 974 F.2d at 1096 ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations."). That the USAM imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant since by its own terms the USAM excludes defendants from reaping any benefits from the

---

to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder. Therefore, defense submissions to the grand jury will be few and far between.

self-imposed policy.[17/] Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or any case. The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by Navarro-Vargas. 408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor"). But he also repeatedly "remind[ed] the grand jury that it stands between the government and the accused and is independent," which was also required by Navarro-Vargas. 408 F.3d at 1207. In this context the unnecessary "duty-bound" statement does not mean the instructions were constitutionally defective requiring dismissal of this indictment or any indictment.

The "duty bound" statement constitutional contentions raised by Defendant do not indicate that the "'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the

---

[17/] The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

independence of the grand jury is substantially infringed." Isgro, 974 F.2d at 1094 (citation omitted). Therefore, this indictment, or any other indictment, need not be dismissed.

**D. GRANT LEAVE TO FILE FURTHER MOTIONS**

Although the Government does not oppose in principle Defendant's request to file further motions, the Government would oppose the filing of any further substantive motions that would not be entertained by the court until the time set aside for motions in limine. If the defendant foresees the need to file further substantive motions, the Government respectfully requests that the defendant request, and the Court set, a separate date for an additional motion hearing, and that any motions in limine and trial not be set until the conclusion of such hearing.

**III.**

**CONCLUSION**

Based on the foregoing, the Court should deny Defendant's substantive motions and grant Defendant's motion for leave to file further motions.

DATED: February 7, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ Christopher P. Tenorio
CHRISTOPHER P. TENORIO
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>TRAVIS PAUL CROSBY,<br>Defendant. | Criminal Case No. 07CR3236-JLS<br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED that:

I, CHRISTOPHER P. TENORIO, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS** on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

**Kasha K. Pollreisz, Esq.**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 7, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/Christopher P. Tenorio
CHRISTOPHER P. TENORIO
Assistant U.S. Attorney